*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILLIAN NEWMAN, as Personal Representative of
the ESTATE OF NICHOLAS NEWMAN,

UNPUBLISHED
March 19, 2025
11:39 AM

Plaintiff-Appellee,

and

LASAUNDRA HINES,

Intervening Plaintiff,

v

No. 368610
Wayne Circuit Court
LC No. 22-001769-NI

DAVID WILLIAM GAVAL III,

Defendant-Appellee

and

ALICIA MARGARET GATES,

Defendant,

and

MEMBERSELECT INSURANCE COMPANY,

Defendant-Appellant.

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff's decedent was killed in a collision with defendant David Gaval, who was driving a vehicle insured by defendant MemberSelect Insurance Company. Plaintiff moved for summary disposition related to the policy limits, and MemberSelect moved for summary disposition on the basis that rescission was warranted or the policy should be reformed to provide for lower coverage. The trial court granted plaintiff's motion and denied defendant's motion. We affirm.

## I. BACKGROUND

In September 2021, Gaval was speeding and collided with two vehicles, including one in which the decedent was driving. Gaval was driving a vehicle owned by defendant Alicia Gates. Gates had previously added Gaval to her insurance policy with MemberSelect before the collision, and the policy renewed in August 2021. The policy included bodily injury liability coverage of $250,000 per person and $500,000 per accident, and it listed Gaval as being "[n]ot licensed." In January 2022, MemberSelect rescinded Gates's policy, indicating that it had relied on misrepresentations that Gates had made, including that Gaval was unlicensed, Gates's spouse, and did not drive her vehicles.

Plaintiff sued Gaval and Gates, alleging negligence, and MemberSelect, seeking a declaratory judgment that MemberSelect must provide coverage under its policy. MemberSelect filed a countercomplaint, requesting that the trial court find that the insurance policy was properly rescinded and that MemberSelect had no duty to defend or indemnify Gates or Gaval.

Plaintiff moved for partial summary disposition under MCR 2.116(C)(10), asking the trial court to order that the statutory minimum for bodily injury coverage was $250,000, which was consistent with Gates's policy, and arguing that rescission was not available to MemberSelect. In a countermotion for summary disposition under MCR 2.116(I)(2), MemberSelect argued that rescission was appropriate because of Gates's misrepresentations in obtaining her policy, but, if rescission was unavailable, the policy should be reformed to provide for coverage of $50,000 per person and $100,000 per collision. MemberSelect included as an exhibit notes from an underwriter indicating that Gates's policy was being rescinded due to failure to disclose Gaval's license status and for allowing him to use her vehicle. The note further indicated that to "[r]e-rate to add [Gaval] as a driver is an additional $629.01 for 6 months."

The trial court found that the equities did not weigh in MemberSelect's favor to support rescission. The trial court explained that Gaval should not have been driving, as he was "basically" intoxicated, and he "was a hidden driver" on the basis of Gates's misrepresentations. The underwriter did not, however, state that the policy would not have been issued with the true information, but, instead, had indicated that the policy cost would have increased by approximately $600 every six months. The trial court considered Gaval's conduct, the severity of the collisions, and the death and injuries of the third parties, who did not "have anything to do with" Gates's misrepresentations. The trial court found that rescission would not be appropriate and that the coverage amounts were $250,000 per individual and $500,000 per collision.

MemberSelect moved for reconsideration, arguing, in part, that the trial court erred by considering the difference in policy cost because, had MemberSelect known the correct facts, it would not have written the policy. In support of this, MemberSelect included an affidavit by an underwriting manager. The trial court denied the motion.

The case was subsequently dismissed by a stipulation between plaintiff, Gaval, Gates, and an intervening plaintiff. MemberSelect now appeals.

## II. ANALYSIS

## A. JURISDICTION

First, plaintiff challenges our jurisdiction to review this case on the basis that MemberSelect failed to reserve its right to appeal in the stipulated order dismissing the case. We review de novo whether this Court has jurisdiction. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). This Court "has jurisdiction of an appeal of right filed by an aggrieved party" from a "final judgment or final order of the circuit court." MCR 7.203(A)(1). A "final order" is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." MCR 7.202(6)(a)(*i*). "A party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (cleaned up).

The stipulated order was the final order, allowing MemberSelect to appeal the previous order, but MemberSelect was not a party to the stipulated order. "[A]n aggrieved party may raise on appeal issues arising from an earlier order relating to one party even if a later, stipulated final order of dismissal as to another party does not contain a reservation of the right to claim an appeal from the earlier order." *Jaber v P & P Hospitality, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 11-12. Here MemberSelect was not a party to the stipulated order dismissing the case. Accordingly, we have jurisdiction to address this appeal.

## B. RESCISSION

Next, MemberSelect argues that the trial court abused its discretion by declining to rescind the insurance policy. "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St. Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "Rescission is granted only in the sound discretion of the court." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 508; 967 NW2d 841 (2021) (cleaned up). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. We review for clear error the trial court's factual findings. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020). Clear error exists when this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*.

"[A]n insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018). Courts are not always required to grant rescission, however, and rescission should not be granted if the result would be unjust or inequitable. *Id*. at 410. When a party seeks rescission, a trial court must balance the equities to determine whether the party is entitled to the relief. *Id*. When two equally innocent parties are affected, the court must determine which party should bear the loss. *Id*. at 410-411. "Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Id*. at 411.

For the purposes of its motion for summary disposition and response to defendant's motion, plaintiff did not dispute the fraud allegations. In *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 410-411; 952 NW2d 586 (2020), we acknowledged that our Supreme Court concluded in *Bazzi* that a determination about rescission was dependent on the circumstances of each case. We adopted a "nonexclusive list of factors" that Justice MARKMAN outlined in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018)

(MARKMAN, J., concurring), for balancing the equities, recognizing that the concurrence was instructive, rather than binding. *Wright*, 331 Mich App at 411. These factors include:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Wright*, 331 Mich App at 411.]

In this case, the trial court did not abuse its discretion when it determined that rescission was not appropriate. Although MemberSelect argues on appeal that the trial court failed to consider all of the proper factors, and relied on other factors that were not relevant to the analysis, the equitable remedy of rescission is "adaptive to the circumstances of each case." *Bazzi*, 502 Mich at 411. The trial court did not find that equity balanced in favor of MemberSelect when the third parties, who had nothing to do with Gates's misrepresentations, were seriously harmed. Moreover, there is nothing in the record to suggest that the third parties had any fault in the collision.

The trial court properly balanced the equities, and its "analysis was specific to the facts and circumstances of the case and went no further than what was equitable." *Wright*, 331 Mich App at 414. "Balancing the equities is not concerned with assigning blame but, rather, with determining which of the innocent parties should bear a loss." *Id*. Not every factor will be relevant in every case, and the trial court here properly considered the specific facts of this case when it determined that rescission was not appropriate. See *Bazzi*, 502 Mich at 410-411.

## C. COVERAGE

Next, MemberSelect argues that, even if rescission is inappropriate, the trial court erred by declining to reform the policy to reflect coverage of $50,000 per person and $100,000 per occurrence. Reformation of a policy may be appropriate when fraud has been demonstrated. *Johnson v USA Underwriters*, 328 Mich App 223, 234; 936 NW2d 834 (2019). "[W]hen an insurance contract providing coverage in excess of the statutory minimum is procured by fraudulent misrepresentation, the insurer may invoke the traditional remedy to rescind the excess coverage." *Southeast Mich Surgical Hosp, LLC v Allstate Ins Co*, 316 Mich App 657, 667; 892 NW2d 434 (2016).

MCL 500.3009(1)(a) provides that for policies issued after July 1, 2020, a motor vehicle liability policy that insures for bodily injury or death must contain "a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident." The limit with injury or death of two or more persons in one accident may not be less than $500,000. MCL 500.3009(1)(b). Under MCL 500.3009(5), an applicant "may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00

under subsection (1)(a) and $100,000.00 under subsection (1)(b)." To make this election, the insured "shall complete a form issued by the director." MCL 500.3009(5).

"[T]he statutorily required minimum residual liability insurance for policies issued after July 1, 2020, is $250,000 per person and $500,000 per accident, pursuant to MCL 500.3009(1)(a) and (b), unless the proper steps are followed to exercise the options of selecting a lower coverage amount under MCL 500.3009(5)." *Progressive Marathon Ins Co v Espinoza-Solis*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366764); slip op at 9. In *Espinoza-Solis*, ___ Mich App at ___; slip op at 2, the plaintiff argued that it was required to provide minimum liability coverage for bodily injury, but that this minimum coverage was either $20,000 under MCL 257.520(b) or $50,000 under MCL 500.3009(5). The issue in *Espinoza-Solis* involved noncooperation of the insured, and, accordingly, differed from the present case. This distinction does not, however, affect the plain language of MCL 500.3009(1) providing for minimum coverage. See also *MemberSelect Ins Co v Partipilo*, ____ Mich App ___; ___ NW3d ___ (2024) (Docket No. 368674); slip op at 3, 6.

Gates never made an election to lower her minimum coverage, particularly considering her policy limit was $250,000/$500,000. In its reply brief filed after this Court issued *Espinoza-Solis*, MemberSelect acknowledges the holding, but argues that this Court wrongly decided the case and requests that we hold this appeal in abeyance pending an appeal of *Espinoza-Solis* in our Supreme Court. A published opinion by this Court has precedential effect, however, notwithstanding an application for leave to appeal in our Supreme Court. MCR 7.215(C)(5). Therefore, the trial court did not err when it found that the liability limits were $250,000 per individual and $500,000 per accident.

Affirmed.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle